MÉNDEZ v. THE ADMINISTRATION OF PORTO RICO ET AL.

APPEAL from the District Court of San Juan.

No. 8.—Decided April 25, 1904.

ACTION—LEGAL CAPACITY OF PARTIES.—The legal capacity of one party having been recognized by another, it is not lawful for the latter to recede from his acts and subsequently question said legal capacity.

INTERNAL REVENUE—ADMINISTRATION OF EXCISE TAXES.—Articles made subject to taxation upon which taxes have been paid at the time of their introduction into a town for immediate consumption cannot be subject to a new tax, and it is the duty of every administration of excise taxes, upon the cessation thereof, to pay over to its successor the amount of the sums collected and surcharges upon the taxed articles which it leaves in existence in public establishments of sale.

ID.—CHANGE OF TARIFF.—The circumstance that a change has been made in the tariff is not sufficient to justify the collection of the difference between the amount paid upon the taxed articles, according to the tariff in force at the time they were introduced, and that payable under the new tariff, since an article cannot be taxed more than once even when it has undergone an industrial transformation.

ID.—EXIGIBILIDAD DE LOS DERECHOS.—Los derechos son exigibles á la llegada al casco de la población de todas las especies de consumo que no vayan de tránsito ó á depósitos autorizados, y desde entonces tienen dichas especies la consideración legal de consumidas, para todos los efectos relacionados con el impuesto, por lo que están exentas del pago de la diferencia de gravamen que haya entre la anterior y la nueva tarifa.

## EXPOSICIÓN DEL CASO.

En el pleito que en grado de apelación ante Nos pende, entre partes, de la una, Don Antonio Méndez, como presidente del Centro de Detallistas de esta ciudad, representado y dirigido en esta Corte Suprema por el Letrado Don Jacinto Texidor y Alcalá del Olmo, y de la otra, la Administración General, representada por el Hon. Assistant Attorney General Don Emilio del Toro, y como coadyuvante, el Ayuntamiento de San Juan, que no ha comparecido ante este Tribunal, sobre revocación de la sentencia dictada por el Tribunal de Distrito de San Juan, en diez y seis de Mayo del año próximo pasado, que copida literalmente, contiene los *Resultandos* siguientes:

"*Resultando*: que el veinte y siete de Noviembre de 1899, manifestó la Presidencia del Ayuntamiento al representante del Centro de Detallistas de esta ciudad que el Gobernador general habia devuelto con su aprobación la tarifia de consumo, que el Concejo y Junta Municipal habían votado aquel año económico, y por consiguiente procedía prácticamente una investigación para conocer las existencias de artículos gravados que hubieren en poder de los detallistas, á fin de liquidar cantidades que debían pagar por diferencia del impuesto que hasta aquél día se había cobrado en moneda provincial y en lo sucesivo en oro, presentando el Gremio de Detallistas instancia al Ayuntamiento para que las existencias que habían satisfecho, el consumo anterior no satisficiesen el nuevo; constando, por certificación del Secretario del Centro Detallistas de 10 de Junio de 1900, que en la Junta General celebrada el 28 de Febrero de 1900 fué reeligido Presidente de ese Centro Don Antonio Méndez, comerciante de esta ciudad, y teniendo el Ayuntamiento por interpuesto el recurso de alzada, declaró no haber lugar á resolver, reservándole el derecho de apelación; é interpuesto éste proveyó el Alcalde se remitieran los

ID.—COLLECTION OF SUMS DUE.—The sums due on articles of consumption not intended for authorized transit or places of deposit are liable to collection upon their arrival in the town proper, and therefore said articles are legally considered as having been "consumed" for all purposes relating to the tax, and are exempt from the payment of the difference in the burdens imposed by the old and the new tariff.

## STATEMENT OF THE CASE.

This is a suit pending before us on appeal, instituted by Antonio Méndez, as president of the "Retailers Association" of this city, who is represented in this Supreme Court by Attorney Jacinto Texidor y Alcalá del Olmo, against the General Administration, represented by Assistant Attorney General Emilio del Toro, and as intervenor, the municipality of San Juan, which has not appeared in this court, seeking the reversal of a judgment rendered by the District Court of San Juan on the sixteenth day of May of last year, which contains the following findings of fact:

"On the twenty-seventh day of November, 1899, the president of the municipal council informed the representative of the 'Retailers Association' of this city that the Governor-General had returned, with his approval, the tariff of excise taxes adopted in that year by the municipal council and municipal board, and therefore, that a practical investigation should be proceeded with for the purpose of determining the amount of stock of taxed articles in the hands of retailers, with a view of liquidating the sums paid by them as the difference between the tax theretofore collected in provincial money and thereafter in gold, the 'Retailers Association' having presented a petition to the municipal council praying that the stocks of goods upon which the former excise taxes had been paid should be exempted from the payment of the new tax. It appears from a "certificate of the secretary of the 'Retailers Association,' dated June 10, 1900, that at a general meeting held on February 28, 1900, Mr. Antonio Méndez, a merchant of this city, was re-elected president of said association. The municipal council deeming that the appeal had been taken, declared that there was no necessity for deciding the matter, and reserved to the party the right of appeal. Said appeal having been taken, the alcalde ordered the records of

antecedentes al Teesorero de Hacienda, según el artículo 184 de la Ley Municipal, desestimando el mencionado Tesorero la alzada interpuesta en seis de Noviembre de 1900, declarando firme en todas sus partes el acuerdo apelado.

*Resultando*: que acompañando copia de esta última resolución interpuso el defensor del Centro de Detallistas recurso contencioso-administrativo; y reclamado el expediente gubernativo, puesto de manifiesto, formuló el reclamante demanda solicitando se revoque dicho acuerdo, declarando en su lugar que las especies gravadas con la tarifa de consumos sobre bebidas y cigarillos, anterior á la ley que hoy rige, no deben satisfacer la diférencia de más que le asignó la última, y por tanto que sin demora debe devolverse por el Ayuntamiento á los reclamantes los tres mil ochocientos noventa y tres pesos con ochenta y dos centavos que consignarán en depósito en la Depositaria Municipal por aquella diferencia.

*Resultando*: que su petición la funda en los hechos siguientes: lo referido en la sesión del 27 de Noviembre de 1899, pidiendo la Presidencia declaraciones juradas de las existencias á los detallistas; que el Centro de Detallistas presentó al Ayuntamiento el escrito ya mencionado, teniendo interpuesto en su caso el recurso de alzada, lo resuelto por el Ayuntamiento ya referido, la petición de que suspendiera el acuerdo, que se negó, admitiéndose la alzada para ante el Tesorero, quien, consultando al Attorney, dió la razón á los detallistas, pero el Tesorero desestimó lo pretendido, aprobando lo acordado por el Ayuntamiento, y no conformes los reclamantes consignaron el depósito antes referido para seguir este recurso, siendo el derecho los artículos 87, 145, 180 á 184 de la Ley Municipal, y las Reales Ordenes de 31 de Diciembre de 1876, 24 de Marzo de 1877 y 15 de Julio de 1878.

*Resultando*: que el Ministerio Fiscal contestó se aprecie en primer término la falta de personalidad en el actor, y si no procediese, declarar sin lugar la demanda con las costas al demandante, sentando como hechos: que el Ayuntamiento de esta Ciudad acordó el pago de los impuestos referidos para el año económico de 1899 á 1900, rigiendo, desde el primero de Diciembre de dicho año, que publicó la tarifa después de aprobada por el Gobernador; que la Corporación

the case to be forwarded to the Secretary of the Treasury, in compliance with article 184 of the Municipal Law, whereupon the said Secretary, on November 6, 1900, dismissed the appeal and declared that the resolution appealed from, and each and every part thereof, was final.

"Counsel for the 'Retailers Association' took a contentious-administrative appeal from this latter decision, accompanied by a copy of the same; and the record of the administrative proceedings having been called for and submitted for inspection, the claimant instituted proceedings for the annulment of said resolution, and to obtain a declaration, if warranted by the circumstances, that the classes of property affected by the excise tariff upon liquors and cigarettes, prior to the passage of the law now in force, should not be compelled to pay the difference in excess of the amount imposed by the latter, and that, therefore, the municipality should forthwith refund to the claimants the sum of three thousand eight hundred and ninety-three *pesos* and eighty-two *centavos* which they deposited in the municipal treasury to cover said difference.

"Their petition is based on the following facts: The proceedings of the session of November 27, 1899, in which the president of the council requested sworn statements of the stock on hand of the retailers; that the 'Retailers Association' addressed the petition in question to the municipal council, and that the appeal was held to have been duly taken; the decision of the municipal council above referred to; the petition for the suspension of the resolution, which was denied; that the appeal was allowed to be taken to the Treasurer, who, after consulting the Attorney General, the latter holding that the retailers were right, denied their claims and approved the action of the municipal council; whereupon the claimants, being dissatisfied with such action, made the deposit hereinbefore referred to for the purpose of prosecuting this appeal. Articles 87, 145 and 180 to 184 of the Municipal Law, and the Royal Orders of December 31, 1876, March 24, 1877, and June 15, 1878, were cited as grounds of law.

"That the Department of Justice made answer praying that the want of legal capacity of the plaintiff be first taken into consideration, and in case said objection should be overruled, that the complaint be dismissed, with costs against the plaintiff, alleging the following facts: That the municipal council of this city ordered payment of said taxes for the fiscal year 1899-1900, to be in force from and after the first day of December of said year, when the tariff was published after

Municipal acordó se practicase una investigación para conocer las existencias de artículos gravados, agregando lo demás que se refiere en el primer Resultando, pidiendosele una relación jurada de dichas existencias; que presentado el escrito al Ayuntamiento para que se declararan exentos de pagos los artículos gravados, y desestimada esa pretensión, se solicitó por el Centro de Detallistas la suspensión del acuerdo que le fué negado, admitiéndosele la alzada para ante el Tesorero, quien la, desestimó, é inconforme el demandante con esa resolución interpuso recurso contencioso-administrativo, compareciendo el defensor en nombre de Don Antonio Mendez en su carácter de Presidente del Centro de Detallistas; siendo el derecho: la falta de personalidad de Mendez sin aparecer justificado sea el Presidente del Centro de Detallistas; que los Ayuntamientos forman anualmente presupuestos, teniendo facultades, teniéndolas para exigir el pago de las diferencias por tarifas de consumos, y que los detallistas no sufren perjuicio.

*Resultando*: que abierto á prueba, de la del actor consta la certificación del Secretario del Ayuntamiento de 25 de Septiembre de 1899, referente al impuesto por consumos, por kilógramos de cigarrillos; la de 27 de Noviembre de 1899 dando cuenta de estar aprobada por el Gobernador la tarifa de consumos procede practicar una investigación para conocer las existencias y liquidar las cantidades que deben pagar por la diferencia del impuesto; y la tercera, referente á la de 28 de Diciembre de 1899, que acordó nombrar una comisión para que estudiara 'la reclamación de los detallistas, sin que la demora perjudique el derecho de los recurrentes en cuanto á la alzada interpuesta; y la cuarta, el acuerdo de 28 de Mayo de 1899 que ordena el cobro con toda urgencia de las cantidades en descubierto por artículos gravados.

"*Resultando*: que señalado día y hora para la vista informaron las partes lo que estimaron conveniente á su derecho."

*Resultando*: que por el mérito de los Resultandos que se dejan transcritos y de fundamentos legales que el mencionado Tribunal estimó aplicables al caso, se dictó sentencia por la cúal declarandose sin lugar la excepción dilatoria de falta de personalidad en el demandante y la demanda interpuesta,

the approval thereof by the Governor; that the municipal council or-
dered an investigation to be made for the purpose of determining the
stocks of goods subject to the tax, adding the substance of the first
finding of fact; and requesting a sworn statement of said stock of
goods; that the petition requesting that the articles in question be
declared exempt from payment having been presented, and said claim
having been denied, the 'Retailers Association' requested the sus-
pension of the resolution, which request was denied and the appeal
allowed to the Treasurer, who dismissed the same; and the complain-
ant, being dissatisfied with said decision, took a contentious-adminis-
trative appeal, counsel having appeared on behalf of Antonio Méndez
in his capacity as president of the 'Retailers Association.' The fol-
lowing legal grounds were relied upon: The want of legal capacity in
Méndez in that it has not been shown that he is the president of the
'Retailers Association;' that municipalities, when empowered to do
so, frame their budgets annually, having power to require payment of
the differences resulting from excise taxes; and that the retailers do
not suffer any damage.

"The case having been opened for the submission of evidence,
there appears in that of plaintiff a certificate of the secretary of the
municipal council of September 25, 1899, relative to the excise tax by
kilograms on cigarettes; a certificate of November 27, 1899, reporting
that the excise tariff having been approved by the Governor, an inves-
tigation should be proceeded with for the purpose of ascertaining the
existence of stocks and of liquidating the amounts to be paid by rea-
son of the difference in the tax; and a third certificate, referring to
that of December 28, 1899, which ordered the appointment of a com-
mission to study the claims of the retailers, without the rights of the
appellants in the appeal taken being prejudiced by the delay; and a
fourth certificate, embodying the resolution of May 28, 1899, ordering
the collection with all due dispatch of the unpaid sums due on the
articles affected.

"A day and hour having been set for the hearing, the parties sub-
mitted arguments in support of their respective rights."

In view of the findings of fact above set forth, and the
legal grounds considered by said court as applicable to the
case, judgment was rendered overruling the dilatory excep-
tion of want of legal capacity in the plaintiff and dismissing

fué absoluta la Administración de la demanda, sin especial condena de costas.

*Resultando* : que el Juez de la Corte de San Juan, Don José Tous Soto, emitió voto particular en el sentido de revocar el acuerdo del Ayuntamiento de San Juan de 28 de Diciembre de 1899, confirmado por el Tesorero de Puerto Rico en seis de Noviembre del año siguiente, y de condenar á dicho Ayuntamiento á reintegrar al Centro de Detallistas la suma de 3,893 dollars 82 centavos, importe de la diferencia de tarifas mandada cobrar y consignada por los demandantes á las resultas de la alzada interpuesta, sin especial condenación de costas, apoyándose en los *Considerandos* siguientes :

"1°. *Considerando* : en cuanto á la excepción dilatoria de falta de personalidad en Don Antonio Mendez, como Presidente del Centro de Detallistas, carácter que no acreditó debidamente," que en el expediente administrativo á este pleito unido consta una certificación del Secretario de dicho Centro, de la que resulta tener el Señor Mendez tal carácter, y si bien no se ha acreditado que la entidad 'Centro de Detallistas de provisiones,' de San Juan, tenga personalidad jurídica por haberse constituido con arreglo al cap. 2 del tit. 2, del libro 1, del Código Civil de 1889, no se ha combatido la personalidad de dicha entidad sino la del Sr. Mendez como representante de la misma; y por otra parte, así el Ayuntamiento aceptando el déposito de la suma de $3,893.82 centavos por diferencia de tarifas, 'Centro,' y en su representación Don Antonio Mendez, (folio 1°.) y admitiendo la alzada interpuesta á nombre del expresado 'Centro,' como el Tesorero de Puerto Rico resolviendo dicha alzada y mencionando á Mendez en comunicaciones oficiales, como representante del Centro de Detallistas (folio 10), han reconocido la personalidad del referido 'Centro' y la de Don Antonio Mendez como representante legal del mismo, que pretende combatirse mediante la excepción alegada; y por tanto no puede prosperar tal excepción de conformidad con la constante jurisprudencia del Tribunal Supremo de España, de que nadie puede ir contra sus propios actos.

2°. *Considerando* : que el Reglamento provisional para la im-

the complaint, and the Administration was released from the demand, without special imposition of costs.

The judge of the San Juan court, José Tous Soto, delivered a dissenting opinion to the effect that the resolution of the municipal council of San Juan of December 28, 1899, which resolution was affirmed by the Treasurer of Porto Rico on the 6th of November of the following year, should be annulled, and that said municipal council should be adjudged to reimburse the "Retailers Association" in the sum of $3,893.82, the amount of the difference in the tariff ordered to be collected and deposited by the plaintiffs to abide the result of the appeal taken, without special imposition of costs, based upon the following conclusions of law:

"With regard to the dilatory exception as to the 'want of legal capacity in Antonio Méndez as president of the "Retailers Association," he having failed to duly show that he was such president,' a certificate of the secretary of said association appears in the record of administrative proceedings attached to this cause, showing that Méndez is acting in such capacity; and although it has not been shown that the legal entity known as the 'Retailers Provision Association of San Juan,' possesses legal capacity, owing to the fact that it was organized under chapter 2 of title II of book I of the Civil Code of 1899, the capacity of said association has not been put in issue, but only that of Méndez as the representative thereof. On the other hand, not only the municipal council, by accepting from the association the deposit of the sum of $3,893.82 as the difference in tariffs, and accepting Antonio Méndez (folio 1) as the representative thereof, and by allowing the appeal taken in the name of said association, but also the Treasurer of Porto Rico, in deciding said appeal and mentioning Méndez in official communications as the representative of the 'Retailers Association' (folio 10), have recognized the capacity of said association and that of Antonio Méndez as the legal representative of the same, which it is sought to question by means of the exception interposed; and therefore said exception cannot prevail according to the constant decisions of the Supreme Court of Spain holding that no person can go against his own acts.

"The provisional regulations for the imposition, administration

posición, administración y cobranza del impuesto consumos de 21 de Julio de 1889 dispone en su artículo 127, párrafo 1°., que 'toda administración de consumos, al cesar, está obligada á abonar á la que le suceda las cantidades que haya percibido por derechos y recargos de las especies gravadas que deje existentes en los establecimientos públicos de venta, para lo cuál se practicarán los aforos correspondientes; disponiendo el párrafo final de dicho artículo 'que durante el período que se practiquen los aforos á que se refiere este artículo, y hasta la terminación de los mismos, la administración saliente podrá intervenir los fielatos establecidos por la que entra, á fin de evitar que sean incluidos en aquéllos las especies introducidas en el expresado período'; de cuyos preceptos se deduce con toda claridad que las especies gravadas que hayan pagado el impuesto al introducirse en una población para el consumo inmediato, (como lo son todas las introducidas fuera de los casos de tránsito, depósitos ó materias primas) no pueden ser gravadas de nuevo ni aún al entrar una nueva administración, siquiera no se hayan consumido dichas especies, por lo que, con el fín de que la nueva Administración no sufra perjuicio por consecuencia de la subsistencia en el mercado de especies que naturalmente han de dismniuir las introducciones de otras similares, es el abono que debe hacerle la administración saliente.

"3°. *Considerando*: que si bien en el caso de autos no se trata de aplicar á artículos, que anteriormente fueron gravados, la nueva tarifa en totalidad, el pretender cobrar la diferencia entre lo que pagaron dichas especies con arreglo á la tarifa vigente cuando fueron introducidas, y lo que deberían pagar conforme á la nueva tarifa, equivale prácticamente á cobrar dos veces el impuesto sobre un mismo artículo contraviniendo el espíritu del citado artículo y los principios fundamentales en materia de impuestos de consumos de que 'una especie no puede ser gravada más de una vez aún en el caso de experimentar transformaciones industriales,' principio á que obedecen las disposiciones exceptuando del impuesto las especies gravadas de tránsito y las primeras materias gravadas cuando lo estén también los productos de fabricación; y de que 'los derechos son exigibles á la llegada al casco de la población de todas las especies de consumo que no vayan de tránsito ó á depósitos autorizados,' teniendo por tanto desde entonces dichas especies la consideración legal de 'consumidas' para todos los efectos relativos al impuesto; artículo 112 y Cap. 19 y 24 del citado Reglamento.

*Considerando*: que es inaceptable el criterio de que la nueva tarifa

and collection of excise taxes of June 21, 1899, provide, in article 127, paragraph 1, that 'every administration of excise taxes, upon the cessation thereof, is obliged to deliver to the adminstration which succeeds it, such sums as it may have received as charges and surcharges upon the different classes of property affected which it leaves in public establishments for sale, in pursuance of which the proper appraisement will be made'; and the final paragraph of said article provides 'that during the period in which the appraisements referred to in this article are made, and until the termination thereof, the retiring administration may intervene in the offices of the inspectors of weights and measures, in order to prevent the different classes of property introduced during said period from being included herein.' It is clearly to be inferred from these provisions that the taxed articles which have paid the tax upon their introduction into a town for immediate consumption (as all articles introduced are except in cases of transit, deposits or raw material) cannot be again subjected to tax, even upon the entry of a new administration, and even though said articles have not been consumed; and in order that the new administration may not suffer damage in consequence of the existence in the market of articles which naturally diminish the introduction of other similar articles, credit should be given it by the retiring administration.

"Although in the case at bar it is not sought to apply the new tariff as a whole to the articles which are previously subjected to taxation, the attempt to collect the difference between the amount paid upon said articles according to the tariff in force when they were introduced, and the amount which they should pay according to the new tariff, is practically equivalent to collecting the tax twice on the same article, thereby contravening the spirit of said article and the fundamental principles upon the subject of excise taxes declaring 'that an article cannot be taxed more than once, even in case it experiences industrial transformations,' a principle which is complied with by the provisions excepting from the tax the articles in transit subject to a tax and the taxed raw material when they are also the products of manufacture; and that 'the duties are collectible upon the arrival in the town proper of all articles of consumption not intended for authorized transit or a place of deposit.' Said articles are, therefore, legally considered thereafter as 'consumed' for all purposes connected with the tax. (Art. 12 and chap. 19 and 24 of said Regulations.)

"The contention that the new excise tariff was framed to go into

de consumos se confeccionó para comenzar á regir desde 1° de Julio de 1899 y no habiéndose aprobado hasta Noviembre del mismo año, sus efectos debieron retrotraerse á la primera fecha, por lo menos, en cuanto á las especies gravadas introducidas después de comenzar el año económico y no consumidas al aprobarse la tarifa, pues aparte de que tales especies, una vez introducidas pagado el impuesto por su consumo, están legalmente consumidas, y por tanto dicho consumo no puede ser base de nueva tributación, no es posible conceder efecto retroactivo á una ordenanza ó acuerdo municipal, no pudiendo tenerlo ni aún las disposiciones emanadas del Poder Legislativo, por virtud del precepto consignado en la Constitución de los Estados Unidos y artículo 4 (debe decir 3) del Código Civil.

*Considerando* por otra parte que aún reconociendo en hipótesis la justicia de aplicar la nueva tarifa á las especies existentes á su aprobación, introducidas después del 1° de Julio de 1899, es practicamente imposible determinar si todas las especies aforadas en Noviembre de 1899 fueron introducidas después de aquélla fecha, y por consiguiente, siempre resultaría improcedente é injusta la aplicación de la nueva tarifa á todas ellas.

6°. *Considerando*: que tampoco es argumento aceptable el de que no ha existido perjuicio para los comerciantes, al pagar por las nuevas y más altas tarifas y no por las vigentes, al verificarse la introducción de las especies gravadas, porque los precios de estas experimentaron alza proporcional al nuevo gravámen, desde que el Ayuntamiento aprobó la nueva tarifa, pues nada tiene que ver el fenómeno económico de la difusión ó repercusión del impuesto representado por dicha alza con el derecho de los reclamantes contra los cuáles se ha dirigido la acción administrativa, de acuerdo con el artículo 116 del Reglamento aludido, cobrándoseles un impuesto indebido, originando este hecho la consiguiente acción legal en los perjudicados para exigir la reparación del agravio, independientemente de la compensación que los agraviados hayan logrado merced á un fenómeno económico derivado de la leyes que regulan la oferta y la demanda.

7°. *Considerando*: que la acción del Ayuntamiento devolviendo á los comerciantes introductores anteriormente la diferencia entre la tarifa vigente al hacerse la introducción de artículos gravados y otra tarifa menor después establecida, devolución realizada de acuerdo con el 'pliego de condiciones' regulador del impuesto, no puede servir de base para deducir un argumento " *á contrario sensu*" á favor de

effect on July 1, 1899, and not having been approved until November of the same year, the effects thereof should operate retrospectively as of the former date, at least as regards articles subject to the tax introduced after the commencement of the fiscal year, and not consumed at the time of the approval of the tariff, is untenable; for apart from the fact that after the introduction of said articles and the payment of the tax for their consumption they are legally considered to have been consumed, and therefore said consumption cannot be made the basis of further taxation, it is not possible to give a retroactive effect to a municipal ordinance or resolution, as this cannot be done even with measures emanating from the legislative power, by reason of the principle laid down in the Constitution of the United States and article 4 (it should say article 3) of the Civil Code.

"On the other hand, even recognizing in theory the justice of applying the new tariff to the articles in existence at the time of its approval, introduced subsequently to July 1, 1899, it is practically impossible to determine whether all the articles made subject to the tax in November of 1899 were introduced after said date, and, consequently, the application of the new tariff to all such articles would always prove inexpedient and unjust.

"Neither is the argument admissible that no damage has been sustained by the merchants in paying the new and higher tariff instead of that in force at the time of the introduction of the articles subject to the tax, for the reason that the prices thereof experienced a rise proportional to the new charge as soon as the municipal council approved the new tariff; since the economic phenomenon created by the effects of the tax represented by said rise in price has nothing to do with the rights of the claimants against whom the administrative action has been directed, under article 116 of the regulations in question, in collecting from them an improper tax, and this fact creates the appropriate legal action in favor of the aggrieved parties to obtain reparation for the injury, independently of the compensation resulting to the aggrieved parties by reason of an economic phenomenon produced by the laws regulating supply and demand.

"The action of the municipality in returning to merchants who had previously introduced articles, the difference between the tariff in force at the time of the introduction of the affected articles and the lower tariff subsequently established, which was done in compliance with the 'statement of conditions' regulating the tax, cannot be utilized as the basis of an argument *a contrario sensu* in favor of said cor-

dicha Corporación en el caso de autos, pues aparte de que ésta no hizo en aquél caso otra cosa que cumplir su "pliego" tal pretendido derecho de reciprocidad serviría para cohonestar actos que resultan en manifiesta infracción del derecho de los demandantes, sin mediar el consentimiento de éstos para que el Ayuntamiento compense la diferencia de tarifas que en otra época devolvió á otros introductores, con la diferencia de tarifas que en el caso ·le autos cobró á los detallistas; sin que pueda argüirse que el mismo "Pliego" autoriza al Ayuntamietno para cobrar la diferencia de tarifas á su favor, pues dicho pliego no puede establecer derechos á favor del Ayuntamiento en oposición con los principios fundamentales que regulan el Impuesto de consumos."

*Resultando*: que contra la sentencia pronunciada interpuso la parte demandante recurso de apelación que le fué admitido, y elevados los autos á esta Corte Suprema previa citación y emplazamiento de las partes, de las cuales sólo comparecieron el Hon. Assistant Attorney General, y el apelante, se dió al recurso la tramitación correspondiente, señalándose día para la vista, en cuyo acto informaron cuanto estimaron conducente á sus respectivas pretensiones la representación de la parte apelante y el Fiscal de esta Corte Suprema.

Abogado del apelante: *Sr. Texidor.*

Abogado del apelado: *Sr. del Toro, Fiscal.*

La otra parte apelada no compareció.

El. Juez Asociado Sr. Hernández, después de exponer los hechos anteriores, emitió la opinión del Tribunal.

*Aceptando,* en lo sustancial, los fundamentos de hecho de la sentencia recurrida.

*Resultando*: que habiendo sido elevadas al Honorable Gobernador General las tarifas de consumos que el Concejo y Junta Municipal de esta Ciudad habían formado para el año económico de 1899 á 1900, aquella superior autoridad devolvió dichas tarifas con su aprobación, á fines de Noviembre del primer año expresado, y en veinte y siete del mismo mes acordó el Ayuntamiento que se pidiesen á los Detallistas

poration in the case at bar; for apart from the fact that said corporation did nothing more than to comply with its 'statement,' said pretended right of reciprocity would serve to make plausible acts which are in manifest violation of the rights of the complainants, permitting the municipality, without the consent of the former, to make compensation for the difference in tariffs which at another time is returned to other dealers with the difference in tariffs which is collected from the retailers in the case at bar. And it cannot be argued that the said 'statement' authorizes the municipality to collect the difference in tariffs in its favor, since said statement cannot establish rights in favor of the municipality in contravention of the fundamental principles governing excise taxes.''

From the judgment rendered the plaintiff took an appeal, which was allowed, and the record having been sent up to this court after a citation of the parties, in which only the Assistant Attorney General and the applicant appeared, the appeal was conducted according to the proper procedure and a day was set for the hearing, at which counsel for the appellant and the *Fiscal* of this Supreme Court presented arguments in support of their respective contentions.

*Mr. Texidor,* for appellant.
*Mr. del Toro, Fiscal,* for respondent.
The other respondent did not appear.

MR. JUSTICE HERNÁNDEZ, after stating the foregoing facts, delivered the opinion of the court.

The findings of fact of the judgment appealed from are in substance accepted.

The excise tariffs framed by the municipal council and municipal board of this city for the fiscal year 1899-1900 having been forwarded to the Governor, that official returned said tariffs with his approval toward the end of November of the said former year, and on the 27th of the same month the municipal council resolved to call upon the retailers for sworn statements of their stocks on hand, and to appoint the necessary commis-

relaciones juradas de las existencias que tuvieran en su poder y se nombraran las Comisiones necesarias para comprobar, si fuera preciso, la exactitud de dichas relaciones, que serían aforadas con arreglo á la nueva tarifa, contra cuyo acuerdo presentó escrito el Gremio de Detallistas al Ayuntamiento, con súplica de que se resolviera que las especies gravadas con la última tarifa de consumos, que hallándose en sus establecimientos hubieran satisfecho el gravamen señalado por la tarifa anterior, no debían satisfacer el nuevo impuesto, teniéndose por interpuesto, en caso de que así no se acordara, recurso de alzada par ante el Sr. Secretario Civil, petición que fué resuelta por la Corporación Municipal en 28 de Diciembre siguiente, en el sentido de nombrar una Comisión para que estudiara detenidamente el asunto y emitiera su dictamen, sin que la demora consiguiente á ese trámite causara perjuicio al derecho de los peticionarios en cuanto á la alzada interpuesta en tiempo y forma.

*Resultando*: que sin haberse emitido por la Comisión nombrada el dictamen que de ella se interesaba, acordó el Ayuntamiento en 28 de Mayo de 1900, á virtud de moción del Diputado de Consumos, que se procediese con toda urgencia al inmediato cobro de lo que debían satisfacer los Detallistas por la diferencia del impuesto de consumos que resultaba según la última tarifa aprobada..

*Resultando*: que el Letrado Don Herminio Diaz Navarro, en representación del Centro de Detallistas, pidió la suspensión del acuerdo de 28 de Mayo de 1900, pues lo que procedía era remitir los antecedentes á la autoridad superior para la resolución de la alzada que tenía interpuesta para el caso de que fuera desestimada la instancia que había presentado contra el acuerdo de 27 de Noviembre de 1899, á lo que resolvio el Hon. Alcalde Presidente del Ayuntamiento en tres de Julio del expresado año mil novecientos, no haber lugar á lo que se solicitaba, admitiéndosele, por resolución posterior de catorce del mismo mes, la apelación interpuesta, recurso

sion to verify, if necessary, the accuracy of said statements, the articles embraced therein to be appraised according to the new tariff. Against this resolution the "Retailers Association" presented a petition to the municipal council, praying it to decide that the articles in their establishments affected by the later excise tax which had paid the charge imposed by the former tariff should not be obliged to pay the new tax, and that it be considered, in the event such action should not be agreed to, that an appeal had been taken to the Civil Secretary. This petition was acted upon by the municipal council on the 28th of December, following, it having resolved to appoint a committee to make a careful study of the matter and make report thereon, provided that the delay consequent upon such action should not prejudice the rights of the petitioner as to the appeal taken in due time and form.

May 28, 1900, the municipal council, at the instance of the deputy of excise taxes, and without the committee appointed having made the report with which it was charged, ordered steps to be taken with all due dispatch for the immediate collection of the sums due by the retailers for the difference in the excise taxes shown by the last tariff approved.

Attorney Herminio Díaz Navarro, as counsel for the "Retailers Association," requested the suspension of the resolution of May 28, 1900, on the ground that the proper course was to transmit the records to the superior authorities for the determination of the appeal taken in case the petition presented against the resolution of November 27, 1899, should be rejected, which request was disposed of on the 3d of July of said year 1900 by the alcalde acting as president of the municipal council, holding that the petition should be denied, and by a subsequent decision of the 14th of said month the appeal taken was allowed. The case was decided on the 6th of Nov-

que resolvió el Hon. Tesorero de Puerto Rico en seis de Noviembre del mismo año, desestimando la alzada interpuesta y declarando firme en todas sus partes el acuerdo apelado, con lo que se originó la demanda interpuesta ante el Tribunal de Distrito de San Juan, en la que se pide se revoque el acuerdo del Ayuntamiento de esta Ciudad de 28 de Mayo de 1900, y declarando en su lugar que las especies gravadas con la tarifa de consumos, anterior á la entonces vigente, no debían satisfacer la diferencia de más que les asignó la última, se ordena la devolución por el Ayuntamiento, á los demandantes, de los tres mil ochocientos noventa y tres dollars ochenta y dos centavos, que se habían consignado en la Depositaría Municipal por aquella diferencia.

Aceptando igualmente las consideraciones de derecho del voto particular, menos la última.

*Considerando* : que si bien el artículo 20 del pliego de condiciones del remate de consumos dispone que en caso de variarse los tipos establecidos para la imposición del impuesto, en la misma proporción han de ser alteradas las cantidades del remate, y el artículo 71 del mismo pliego estatuye que al entregar el servicio el contratista ó persona que haya tenido encargo de recaudar el impuesto al que lo obtenga en la subasta sucesiva, se hará un recuento de las existencias en el comercio, y abonará el primero al segundo el importe de los derechos que haya percibido de dichas existencias y que no hayan sido consumidas en el momento de la entrega, del texto de tales artículos, invocados en su apoyo por la Administración, no se desprende que el Ayuntamiento tenga el derecho de cobrar mayor valor del impuesto por razón del aumento de las nuevas tarifas, cuando, como en el caso presente, se trata de existencias que ya han pagado los derechos correspondientes.

*Considerando* : que en corroboración de la doctrina expuesta viene la Real Orden de 24 de Marzo de 1887, que establece que las especies adquiridas por los dueños de esta-

ember of the same year by the Treasurer of Porto Rico, who dismissed the appeal taken and declared the resolution appealed from final, and each and every part thereof, as the result whereof the suit was commenced in the District Court of San Juan to secure the nullification of the resolution of the municipal council of this city of May 28, 1900, and for a declaration, if meet in the premises, that the articles subject to the tariff of excise taxes prior to the one in force ought not to pay the difference in excess of that imposed upon the latter, and that the sum of $3,893.82, which had been deposited in the municipal treasury to cover said difference, should be ordered by the municipal council to be returned to the plaintiffs.

The conclusions of law set forth in the dissenting opinion, with the exception of the last thereof, are likewise accepted.

Although article 20 of the statement of conditions pertaining to the award of the privilege of collecting excise taxes provides that in case of alteration in the rates established for the imposition of the tax, the amounts of the award must be altered in the same proportion, and article 71 of said statement prescribes that upon the surrender of the privilege by the contractor, or person charged with the collection of the tax, to the person obtaining the same in subsequent bidding, a new count shall be made of the stock on hand in commercial houses, and that the former shall pay over to the latter the amount of the charges received by him from said articles which have not been consumed at the time of the surrender of the privilege, it cannot be concluded from the text of the articles cited by the Administration in support of its position that the municipality has the right to collect a larger tax by reason of the increase made by the new tariffs, when, as in the present case, stocks of goods are involved which have already paid the proper charges.

A confirmation of the doctrine enunciated may be found in the Royal Order of March 24, 1887, prescribing that goods acquired by the owners of public establishments for the sale

blecimientos públicos con destino á la venta deben estimarse consumidas para los efectos del impuesto, si hubieren pagado los derechos á su entrada en la población, y por tanto que las existencias que resulten en los referidos establecimientos, al cambiarse las tarifas, están exentas del pago de la diferencia de gravamen de unas ú otras.    -

*Fallamos*: que desestimando la excepción dilatoria de falta de personalidad en el actor, debemos revocar y revocamos el acuerdo del Ayuntamiento de esta Ciudad de 27 de Noviembre de 1899 y su concordante de 28 de Mayo del año siguiente, como también el del Tesorero de Puerto Rico de seis de Noviembre de 1900; y declarando que las existencias que había en los establecimientos de los Detallistas con destino á la venta en la fecha en que comenzaron á regir las tarifas de consumos sobre bebidas y cigarrillos, después de aprobadas por el Hon Mayor General Davis, están exentas del pago de la diferencia de gravamen establecida por dichas tarifas con relación á las anteriores, mandamos se devuelva por el Ayuntamiento de esta Ciudad al Centro de Detallistas la suma de tres mil ochocientos noventa y tres dollars ochenta y dos centavos importe de la diferencia de tarifas indebidamente cobrada, cantidad consignada por los recurrentes en la Depositaría Municipal, todo sin especial condenación de costas en lo conforme, confirmamos, y en lo que nó, revocamos la sentencia apelada; y devuelvánse los autos al Tribunal de Distrito de San Juan con la certificación correspondiente.

Jueces concurrentes: Sres: Presidente Quiñones y Asociados Figueras y MacLeary.

El Juez Asociado, Sr. Sulzbacher no formó Tribunal en la vista en este caso.

thereof should be considered as consumed for the purposes of the tax, provided that the charges thereon were paid upon their entrance into the town, and, therefore, that the stocks of goods remaining over in said establishments at the time of the change in the tariffs are exempt from the payment of the difference in the burdens imposed by the one or the other.

Overruling the dilatory exception of want of legal capacity in the plaintiff, we adjudge that we ought to revoke and do revoke the resolution of the municipal council of this city of November 27, 1899, and the related resolution of the 28th of May of the following year, as well as the decision of the Treasurer of Porto Rico of November 6, 1900. We also declare that the stocks of goods on hand in the retailers' establishments intended for sale on the date when the tariffs of excise taxes on drinks and cigarettes went into effect, after the approval thereof by Major-General Davis, are exempt from the payment of the difference in the tax prescribed by said tariffs with relation to former tariffs, and order the sum of $3,893.82, the amount of the difference in tariffs improperly collected, and the amount deposited by the appellant in the municipal treasury, to be returned by the municipal council of this city to the "Retailers Association," all without special imposition of costs. In so far as we concur in the judgment appealed from the same is affirmed and is in all other respects reversed. The record of the District Court of San Juan is ordered to be returned with the proper certificate.

Chief Justice Quiñones and Justices Figueras and MacLeary concurred.

Mr. Justice Sulzbacher did not sit at the hearing of this case.